ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

LLOYD FARNHAM (CABN 202231)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Email: lloyd.farnham @ usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JOSE LAINEZ (aka JOSE ALFREDO LAINEZ BANEGAS),<br><br>    Defendant. | CASE NO. 3:23-CR-00334 WHA<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING**<br><br>Date:  October 10, 2023<br>Time:  2:00 p.m.<br>Court:  Hon. William Alsup |

## I. INTRODUCTION

The United States and the defendant, Jose Lainez, jointly request that the Court accept the proposed plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). This case is part of the United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-air drug market that exists in San Francisco's Tenderloin District (the Tenderloin) through a combination of enforcement and quick dispositions that prevent drug traffickers from returning to the Tenderloin. These efforts will occasionally take the form, as here, of prosecution of street-level dealing where the defendant has limited criminal history and does not have a role in in the importation or transportation of larger volumes of drugs. The circumstances of this case lead the United States to seek expedited

prosecution, obtain a federal conviction, and enforce a strict three-year stay-away order that immediately would prevent this defendant from returning to the Tenderloin and thus dissuade the defendant from engaging in further drug trafficking.  For the reasons set forth below, the United States and the defendant believe that a below-Guidelines sentence—accounting for the time served in this expedited prosecution—alongside this geographical restriction meet the statutory requirements of Section 3553(a) of a sentence that is no longer than necessary to achieve the goals of sentencing.

## II. MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING

To advance the goals of this accelerated disposition, the parties jointly move the Court to proceed to sentencing without a presentence investigation report, and to have the summary sentencing proceeding take place during the same hearing as the defendant's change of plea, or as shortly thereafter as is practicable.  This will achieve the expedited proceeding contemplated by both parties.  The Court may sentence without a presentence investigation report if it "finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553" and "explains its finding on the record."  Fed. R. Crim. Proc. 32(c)(1)(A)(ii); *see also* Fed. R. Crim. P. 32(b)(1), U.S.S.G. §6A1.1, Crim. Local Rule 32-1(b).  The government respectfully submits that the record here—the Criminal Complaint, the Plea Agreement, and the sentencing memoranda, all detailing the defendant's offense conduct and other factors relevant under § 3553—enable the Court to meaningfully exercise its sentencing authority under § 3553 and proceed to sentencing without the need for a presentence investigation report.  The parties request that the Court explain its findings and the sufficiency of the record at time of sentence.

## III. APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

The government calculates the following Guidelines range:

a. Base Offense Level, U.S.S.G. §2D1.1(a)(5), (c)(8): 24
Defendant possessed at least 40 G and less than 160 G of fentanyl

b. Acceptance of Responsibility, U.S.S.G. §3E1.1: - 3

c. Adjusted Offense Level: 21[1]

---

[1] The parties further agree that a two-level downward variance is appropriate if the defendant is sentenced prior to November 1, 2023, and would otherwise qualify for the Zero Point Offender Adjustment set forth in the forthcoming USSG §4C1.1.  If the defendant is sentenced after that date, the adjusted offense level would be 19, yielding an advisory guidelines range of 30-37 months.  The

The government calculates a Criminal History Category of I (0 points). The government has reviewed and produced in discovery the criminal history report for the defendant available through the National Crime Information Center, a criminal records database, and the Records Check Report prepared by Pretrial Services. Both reports reflect that the defendant does not have any prior criminal convictions. He was arrested for narcotics as a juvenile, and in that case was placed on diversion; but that case has not resulted in a conviction.

An Adjusted Offense Level of 21 and a Criminal History Category of I result in a Guidelines range of 37 to 46 months. The government also seeks a three-year term of supervised release (as required by statute) and imposition of the $100 mandatory special assessment.

## IV.    SENTENCING RECOMMENDATION

Consistent with the Plea Agreement in this case, the parties jointly request a sentence of time served and a three-year term of supervised release that includes a special condition that the defendant may not re-enter the Tenderloin during the period of supervised release. This stay-away condition is a critical component of the plea bargain because it prevents the defendant from returning to the Tenderloin, from where the defendant's conviction for drug trafficking arises.

**A.    Section 3553 Factors**

1. ***Nature and circumstances of the offense and history and characteristics of the defendant***

The defendant is 18 and was born in Honduras. According to the Department of Homeland Security, the defendant lacks immigration status and is removable under U.S. immigration law. There is an immigration detainer in place such that the parties expect the defendant will be transferred to the custody of the Department of Homeland Security for removal proceedings following release from the custody of the U.S. Marshals. To the government's knowledge, the defendant has no prior criminal convictions, though he was arrested in January of 2023, while still a minor, and charged with distribution of a controlled substance. That case appears to have been resolved through diversion.

On September 27, 2023, the defendant was observed by law enforcement agents engaging in

---

guidelines computation set forth above does not incorporate this two-level variance if the defendant is sentenced prior to November 1, 2023.

street-level drug transactions at an intersection in the Tenderloin.  Between about 10:00 a.m. and until he was arrested at about 1:30 p.m., law enforcement agents conducting concealed surveillance saw the defendant engage in many transactions that appeared to the agents to be drug transactions—defendant either engaged directly with the suspected buyers or directed buyers to other people defendant appeared to be working with to facilitate a hand-to-hand purchase.  Defendant sometimes led buyers to another individual later determined to be Marlon Gustavo Valle-Acosta, an individual who was also arrested when defendant Lainez was arrested, and who was charged in the same criminal complaint).

At about 1:30 pm, agents arrested the defendant based on the observed criminal drug dealing.  When he was searched incident to that arrest, agents recovered from him 41.5 grams of a white substance that a field test device indicated was fentanyl, and $235 in cash.

In his plea agreement, the defendant admits that he possessed this fentanyl with the intent to distribute it to others, and that the cash he had was the proceeds from illegal drug sales.  Plea Agreement, ¶ 2. The evidence that the government is aware of indicates that defendant Lainez is a street-level drug dealer, selling individual users relatively small amounts of fentanyl for relatively small amounts of money.  He does not appear to be trafficking in larger amounts, managing teams of street-level or higher distributors, or to be involved in the importation or transportation of large volumes of narcotics.

After his arrest, the defendant did not seek release on bail and consented to remain in custody during the pendency of this case.  In his plea agreement, the defendant also acknowledges that a conviction in this case "makes it practically inevitable and a virtual certainty that I will be removed or deported from the United States." Plea Agreement, ¶ 1.

> 2. ***Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant***

The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin District and much of the South of Market neighborhood, is in crisis.  The proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and methamphetamine has exacted a crushing human toll in the Tenderloin.  The Tenderloin open-air drug market not only creates suffering for its participants (including staggering amounts of overdoses and fatalities) but also dire externalities

for the people and families that live and work in the Tenderloin, as well as for San Francisco itself. The effects of the defendant's offense, considered as an individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

In this case, the government does not believe that a more significant period of incarceration is necessary in this case in part because it is his first federal arrest and conviction. Later convictions, especially for conduct in the Tenderloin in violation of the proposed geographic restrictions in the supervised release conditions, would likely result in more significant sanctions and time in prison.

The proposed sentence—of time served and a three-year term of supervised release with a highly-restrictive geographic restriction—is a downward variance from the Guidelines range but one that the government submits is appropriate given the defendant's conduct and criminal history, the unique problem the Tenderloin faces, and the need for deterrence and protection of the public.

As one of the government's requests for the defendant to be extended this plea offer, the defendant waived detention and has been in continuous custody since arrest; the government offered the defendant a time-served sentence in exchange for the defendant's agreement to promptly plead guilty and proceed to sentencing (including waiving indictment) within days of arrest; the defendant also agreed to be subject to a three-year term of supervised release that includes a strict stay-away condition from the Tenderloin. The defendant is on notice that a return to the Tenderloin (in violation of the defendant's supervised release terms) will invite new charges or supervised release violations.

This disposition would result in a drug trafficking conviction within weeks of arrest (not months or years), immediate separation of the defendant from the Tenderloin, and a court-enforceable mechanism to prevent the defendant from returning to the Tenderloin. The speed at which this case moved will free up other government resources to prosecute additional federal crimes, including in the Tenderloin.

B.  **The necessity of the proposed supervised release special conditions**

A three-year term of supervised release is required by statute for the drug-trafficking offense to which the defendant has agreed to plead guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this disposition. In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug

traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to effect a strict stay-away from the Tenderloin for three years. Under the terms of supervised release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but the defendant will be prohibited from entering the Tenderloin without prior approval by U.S. Probation:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Street, on the east by Powell Street and 3rd Street, and on the south by Howard Street.

Combined with a suspicionless search condition, to which the parties have also agreed, Section 3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained. The stay-away condition is also necessary given the particular circumstances of Tenderloin drug trafficking, where the Court has repeatedly encountered recidivism from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin. *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB.

On the facts of this particular case, under the § 3553(a) factors and given the provisions of the Plea Agreement, the government respectfully submits that the contemplated disposition here is sufficient but not greater than necessary to accomplish the goals of § 3553(a).

## V.   CONCLUSION

For these reasons, the government recommends that the Court sentence the defendant to a sentence of time served, to be followed by a term of supervised release of three years and the special conditions agreed to by the parties in the Plea Agreement, including the stay-away condition.

DATED: October 4, 2023                                                  Respectfully Submitted,

ISMAIL J. RAMSEY
United States Attorney

_____/s/_____
LLOYD FARNHAM
Assistant United States Attorney