ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

LLOYD FARNHAM (CABN 202231)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Email: lloyd.farnham @ usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:23-CR-00334 WHA |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| JOSE LAINEZ (aka JOSE ALFREDO LAINEZ BANEGAS), | Date:  December 5, 2023<br>Time:  2:00 p.m.<br>Court:  Hon. William Alsup |
| Defendant. | |

## I.   INTRODUCTION

The defendant Jose Alfredo Lainez Banegas is before the Court for sentencing, having admitted to possession of fentanyl for sale. The defendant Lainez Banegas is a street-level dealer and was arrested in San Francisco's Tenderloin neighborhood after he was observed participating in small drug transactions to drug users. According to the Presentence Report, he is 18, has no criminal convictions, and has been in the United States for about two years earning money to send home to assist his family. The defendant has been in federal custody for more than two months, since his arrest on September 27.

The defendant entered a guilty plea pursuant to a plea agreement with the government under

Federal Rule of Criminal Procedure 11(c)(1)(C). The government asks the Court to accept the plea agreement and sentence the defendant according to the agreed disposition in the plea agreement, a sentence of time served plus one day, along with other conditions and sanctions critical to deter future conduct and protect the public.

This case is part of the United States Attorney's Office efforts to disrupt the fentanyl and methamphetamine open-air drug market that exists in San Francisco's Tenderloin through a combination of increased enforcement and expeditious dispositions that prevent drug sellers from returning to the Tenderloin. These efforts will occasionally take the form, as here, of prosecution of street-level dealing where the defendant has limited criminal history, is not a supervisor or leader of others, and is not otherwise a supplier of larger quantities of drugs. The circumstances of this case lead the United States to seek expedited prosecution, obtain a federal conviction, and enforce a strict three-year stay-away order that would prevent this defendant from returning to the Tenderloin and thus dissuade the defendant from engaging in further drug trafficking. For the reasons set forth below, the government believes that a below-Guidelines sentence—accounting for the time already served in custody—alongside this geographical restriction meet the statutory requirements of Section 3553(a) of a sentence that is no longer than necessary to achieve the goals of sentencing.

**II.    APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY**

The government agrees with the PSR's calculation of the Guidelines range:

a.   Base Offense Level, U.S.S.G. §2D1.1(a)(5), (c)(8):                                            24
     Defendant possessed at least 40 G and less than 160 G of fentanyl

b.   Acceptance of Responsibility, U.S.S.G. §3E1.1:                                              - 3

c.   Zero-Point Offender adjustment, USSG § 4C1.1(a)(1)-(10)                                      -2

d.   Adjusted Offense Level:                                                                       19

The PSR concludes that the defendant has no criminal history points, resulting in a Criminal History Category of I.

An Adjusted Offense Level of 19 and a Criminal History Category of I result in a Guidelines range of 30 to 37 months. The government also seeks a three-year term of supervised release (as required by statute) and imposition of the $100 mandatory special assessment.

### III. SENTENCING RECOMMENDATION

Consistent with the plea agreement in this case, the government recommends that the Court sentence the defendant to a sentence of time served plus one day, and a three-year term of supervised release that includes a special condition that the defendant may not enter the Tenderloin during the period of supervised release. This stay-away condition is a critical component of the plea bargain because it prevents the defendant from returning to the Tenderloin, from where the defendant's conviction for drug trafficking arises.

**A.     Sentencing Factors Under 18 U.S.C. § 3553(a)**

**1.     Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

The defendant is 18 and was born in Honduras. According to the Department of Homeland Security, the defendant lacks immigration status and is removable under U.S. immigration law. There is an immigration detainer in place and the defendant will be transferred to the custody of the Department of Homeland Security for removal proceedings following release from the custody of the U.S. Marshals.

On September 27, 2023, the defendant was observed by law enforcement agents engaging in street-level drug transactions at an intersection in the Tenderloin. Between about 10:00 a.m. and until he was arrested at about 1:30 p.m., law enforcement agents conducting concealed surveillance saw the defendant engage in many transactions that appeared to the agents to be drug transactions—defendant either engaged directly with the suspected buyers or directed buyers to other people defendant appeared to be working with to facilitate a hand-to-hand purchase. Defendant sometimes led buyers to another individual later determined to be Marlon Gustavo Valle-Acosta, an individual who was also arrested when defendant Lainez Banegas was arrested, and who was charged in the same criminal complaint).

At about 1:30 pm, agents arrested the defendant based on the observed criminal drug dealing. When he was searched incident to that arrest, agents recovered from him 41.5 grams of a white substance that a field test device indicated was fentanyl, and $235 in cash.

In his plea agreement, the defendant admits that he possessed this fentanyl with the intent to distribute it to others, and that the cash he had was the proceeds from illegal drug sales. Plea Agreement, ¶ 2. The evidence that the government is aware of indicates that defendant Lainez is a street-

level drug dealer, selling individual users relatively small amounts of fentanyl for relatively small amounts of money. He does not appear to be trafficking in larger amounts, managing teams of street-level or higher distributors, or to be involved in the importation or transportation of large volumes of narcotics.

After his arrest, the defendant did not seek release on bail and consented to remain in custody during the pendency of this case. In his plea agreement, the defendant also acknowledges that a conviction in this case "makes it practically inevitable and a virtual certainty that I will be removed or deported from the United States." Plea Agreement, ¶ 1.

### 2. Need for the Sentence to Provide Just Punishment and Adequate Deterrence, and to Protect the Public from Further Crimes of the Defendant

The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin District and much of the South of Market neighborhood, is in crisis. The proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and methamphetamine has exacted a crushing human toll in the Tenderloin. The Tenderloin open-air drug market not only creates suffering for its participants (including staggering amounts of overdoses and fatalities) but also dire externalities for the people and families that live and work in the Tenderloin, as well as for San Francisco itself. The effects of the defendant's offense, considered as an individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

In this case, the government does not believe that a more significant period of incarceration is necessary in part because it is his first federal arrest and conviction. Later convictions, especially for conduct in the Tenderloin in violation of the proposed geographic restrictions in the supervised release conditions, would likely result in more significant sanctions and time in prison.

The proposed sentence—of time served and a three-year term of supervised release with a highly-restrictive geographic restriction—is a downward variance from the Guidelines range but one that the government submits is appropriate given the defendant's conduct and criminal history, the unique problem the Tenderloin faces, and the need for deterrence and protection of the public.

As one of the government's requests for the defendant to be extended this plea offer, the defendant waived detention and has been in continuous custody since arrest; the government offered the

defendant a time-served sentence in exchange for the defendant's agreement to promptly plead guilty and proceed to sentencing (including waiving indictment) within days of arrest; the defendant also agreed to be subject to a three-year term of supervised release that includes a strict stay-away condition from the Tenderloin.  The defendant is on notice that a return to the Tenderloin (in violation of the defendant's supervised release terms) will invite new charges or supervised release violations.

This disposition would result in a drug trafficking conviction within weeks of arrest (not months or years), immediate separation of the defendant from the Tenderloin, and a court-enforceable mechanism to prevent the defendant from returning to the Tenderloin.  The speed at which this case moved will free up other government resources to prosecute additional federal crimes, including in the Tenderloin.

### B.     The Necessity of the Proposed Supervised Release Special Conditions

A three-year term of supervised release is required by statute for the drug-trafficking offense to which the defendant has agreed to plead guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this disposition.  In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public by immediately separating drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to impose a strict stay-away from the Tenderloin for three years.  Under the terms of supervised release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but the defendant will be prohibited from entering the Tenderloin without prior approval by U.S. Probation:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Street, on the east by Powell Street and 3rd Street, and on the south by Howard Street.

Combined with a suspicionless search condition, to which the parties have also agreed, Section 3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained.  The stay-away condition is also necessary given the particular circumstances of Tenderloin drug trafficking, where the Court has repeatedly encountered recidivism

from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin.  *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB.

On the facts of this particular case, under the § 3553(a) factors and given the provisions of the Plea Agreement, the government respectfully submits that the contemplated disposition here is sufficient but not greater than necessary to accomplish the goals of § 3553(a).

## IV.  CONCLUSION

For these reasons, the government recommends that the Court sentence the defendant to a sentence of time served plus one day, to be followed by a term of supervised release of three years and the special conditions agreed to by the parties in the Plea Agreement, including the stay-away condition.

DATED: November 28, 2023                                          Respectfully Submitted,

ISMAIL J. RAMSEY
United States Attorney

　　　　　　/s/
LLOYD FARNHAM
Assistant United States Attorney